UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 07-CV-3083 (JFB)

———————————

IN RE: NANCY DERISE,

Debtor.

MARC A. PERGAMENT,

Appellant,

VERSUS

NANCY DERISE,

Appellee.

———————————

MEMORANDUM AND ORDER
March 27, 2008

———————————

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Nancy DeRise (hereinafter, the "Debtor" or "DeRise"), pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (hereinafter, the "Bankruptcy Court").

Trustee Marc A. Pergament (hereinafter, the "Trustee" or "Pergament") appeals from the May 4, 2007 Memorandum of Decision and Order (hereinafter, the "May 4 Memorandum and Order") of the Honorable Stan Bernstein, United States Bankruptcy Judge, dismissing Trustee's complaint under 11 U.S.C. §§ 727(a)(3), (4), and (6), which sought a denial of Debtor's discharge for having made a false oath with respect to her financial disclosures, for concealing or failing to keep or preserve any recorded information regarding the Debtor's financial condition, and for refusing to obey a lawful order of the Bankruptcy Court.

In connection with that decision, the Bankruptcy Court refused to consider certain of the Trustee's exhibits, even though such exhibits were received in evidence at the trial based upon a representation by the Trustee during the trial (which was not contradicted by opposing counsel) that the admissibility of these exhibits was the subject of a stipulation in the Joint Pre-Trial Statement ("JPTS"). When the Bankruptcy Court reviewed the JPTS after the trial and saw no explicit

language reflecting a stipulation of admissibility regarding these documents, he refused to consider them in connection with his rulings on the relevant issues. The post-trial decision to refuse to consider these exhibits, even though both sides believed at the end of the trial that such exhibits were part of the record, was made without any notice to the parties and without an opportunity for the Trustee, if the Court believed there was no stipulation of admissibility, to lay a sufficient foundation for the admissibility of these documents under the Federal Rules of Evidence.

The Trustee now appeals from the May 4 Memorandum and Order on the following grounds: (1) the Bankruptcy Court erred in finding that the exhibits annexed to the parties' JPTS were not properly admitted into evidence; (2) the Bankruptcy Court erred in failing to find that the Debtor's failure to comply with an Order of the Bankruptcy Court, dated November 30, 2005, setting forth a deadline by which the Debtor must file her amended schedules and Statement of Financial Affairs, warranted the denial of the Debtor's discharge; (3) the Bankruptcy Court erred in failing to find that the Debtor made knowingly false statements in her Schedules and Statement of Financial Affairs (hereinafter, "SOFA") with fraudulent intent; (4) the Bankruptcy Court erred by considering the Debtor's alleged lack of sophistication in financial matters in determining that the Debtor did not act with fraudulent intent; (5) the Bankruptcy Court erred by failing to find that the Debtor failed or refused to turn over post-petition rents to the Trustee; and (6) the Bankruptcy Court erred in failing to find that the Debtor obstructed the Trustee's administration of the bankruptcy case.

As set forth below, the Court finds that the Bankruptcy Court's refusal to admit certain exhibits annexed to the parties' JPTS and considered at trial was an abuse of discretion which affected a party's substantial right to present evidence the party believed was relevant to the issues that were the subject of the trial. Accordingly, the Court reverses the May 4, 2007 Memorandum and Order and remands this case to the Bankruptcy Court to either consider these exhibits (if the Appellee does not object to their admission), or provide Trustee with an opportunity to seek to admit such documents under the Federal Rules of Evidence. Moreover, because the Appellee also complains that certain of Appellee's exhibits were not considered, the Bankruptcy Court should also follow the same procedure with respect to any other exhibits that were listed by either party in the JPTS.

In addition, because the substance of those excluded exhibits could affect the Bankruptcy Court's determination on several of the Trustee's remaining issues on appeal – namely, that the Debtor did not make false statements knowingly and with fraudulent intent, that the Debtor's failure to comply with an Order of the Bankruptcy Court warranted discharge, that the Debtor failed or refused to turn over post-petition rents to the Trustee, and that the Debtor obstructed the Trustee's administration of the bankruptcy case – the Court will not consider those arguments at this time on appeal.

However, there is one pure legal issue on appeal that the Court can consider despite the remand on the above-referenced issues – namely, whether it was error for the Bankruptcy Court to take into consideration the Debtor's lack of financial sophistication in determining whether the Debtor acted with fraudulent intent. As set forth below, contrary to the Trustee's suggestion that the

Bankruptcy Court wrongfully considered the Debtor's lack of sophistication of financial matters in making such a determination, the Bankruptcy Code does not prohibit such consideration and the Bankruptcy Court clearly is well within its discretion to do so.

I. BACKGROUND

A. The Debtor's Failure to Appear

On September 13, 2005, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (JPTS ¶ 1.) The Debtor did not file the required schedules nor did she file the SOFA. (*Id.*)[1]

The Clerk of the United States Bankruptcy Court issued a notice to the Debtor concerning the deficiencies in her bankruptcy filing. (*Id.* ¶ 2.) The notice required the filing of Schedules A, B, C, E, G, H, I, and J and the SOFA by September 28, 2005. (*Id.*) The Bankruptcy Court issued another notice on or about September 13, 2005, which required the Debtor to appear for her 341 Meeting (the "341 Meeting") on October 12, 2005. (*Id.* ¶ 3.) The Debtor failed to appear for her 341 Meeting on October 12, 2005. (*Id.* ¶ 4.) The Debtor also failed to file the required schedules and SOFA by September 28, 2005. (*Id.* ¶ 5.)

On or about November 10, 2005, the Trustee served the Debtor with a "Notice of Presentment" for an Order compelling the Debtor to file the missing schedules and SOFA, and also to appear for her 341 Meeting. (*Id.* ¶ 6.) The Debtor did not file any objection to the Trustee's "Notice of Presentment." (*Id.* ¶ 7.) On November 30, 2005, the Bankruptcy Court issued an Order granting the relief requested in the Trustee's "Notice of Presentment" (the "November 30, 2005 Order). (*Id.* ¶ 8.) By letter dated December 9, 2005, the Trustee served a copy of the Bankruptcy Court's November 30, 2005 Order on the Debtor by certified mail, return receipt requested, and first class mail. (*Id.* ¶ 9.) The Debtor did not comply with the terms of the November 30, 2005 Order – she failed to file the required schedules and SOFA and failed to appear for her 341 Meeting on December 13, 2005. (*Id.* ¶ 10.)

On March 13, 2006, Reno & Artura was retained as the Debtor's counsel and filed the required schedules and SOFA on March 16, 2006. (*Id.* ¶ 13.) The Debtor also appeared for her 341 Meeting on July 18, 2006. (*Id.* ¶ 19.)

B. The Debtor's Filing of Schedules and SOFA

On Debtor's Schedule I, the Debtor represented that she was receiving alimony, maintenance, and support in the sum of $1,100 per month and that she was receiving rent from "Russ" in the sum of $500 per month. (Trustee's Br., at 6; Schedule I.) On her Schedule J, the Debtor represented that she was making monthly payments on her first mortgage in the sum of $2,005. (Trustee's Br., at 6; Schedule J.) On her Schedule D, the Debtor failed to disclose a HUD mortgage. (Trustee's Br., at 6; Schedule D.)

---

[1] The Debtor states that she filed the "barebones" petition at the instruction of "an unlicensed and disreputable bankruptcy petition preparer." (Debtor's Br., at 4.) However, the Trustee argues that Debtor consulted with two attorneys prior to filing the petition, to whom she paid retainers (Trustee's Br., at 4.) Specifically, the Trustee alleges that the Debtor met with a matrimonial attorney in September 2005 and a bankruptcy counsel in October 2005. (*Id.*)

3

On her SOFA, the Debtor represented that her income other than from employment during the two (2) years immediately preceding the bankruptcy was; "0.00 Child Support Payments are owed at approximately $275/week but they are received only sporadically." (Trustee's Br., at 6; SOFA.) The SOFA did not reflect any rent paid to the Debtor. (*Id.*)

On June 22, 2006, the Debtor filed an amended Schedule F. (Trustee's Br., at 6; Am. Schedule F.) The Debtor never amended her Schedules I and J or her SOFA. (Trustee's Br., at 6.)

### C. The 220 Spiral Road Property

The Debtor and her estranged husband were owners in fee as tenants by the entirety of the real property known as 220 Spiral Road, Holtsville, New York (the "Property").[2] (JPTS ¶ 11.) The Debtor did not disclose to the Trustee until about March 2006 that the Property was being occupied in part by a tenant. (*Id.* ¶ 12.) The Trustee demanded in Court that the Debtor turn over all rent collected with respect to the Property (*id.* ¶ 14), but the Debtor did not turn over any of the demanded funds (*id.* ¶ 15). The Trustee also issued a letter dated June 5, 2006 to Reno & Artura for the Debtor to turn over all rent collected with respect to the Property. (*Id.* ¶ 16.) The Debtor refused and has continued to refuse to turn over to the Trustee all rent collected with respect to the Property from September 13, 2005 because it is jointly owned property being used as child support. (*Id.* ¶ 17.)

### D. The Trustee's Complaint

On January 6, 2006, the Trustee served a Summons and Complaint seeking an order denying the Debtor his discharge: "(1) under 11 U.S.C. § 727(a)(6)(A), for 'refusal to obey an [sic] lawful order of the court'; (2) under [11] U.S.C. § 727(a)(4) for 'knowingly and fraudulently . . . ma[king] a false oath or account'[3] and (3) under 11 U.S.C. § 727(a)(3), for 'fail[ing] to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained.'" (Trustee's Br., at 5.) The Trustee alleged, *inter alia*, "that the Debtor violated the November 30, 2005 Order, filed false Schedules and Statement of Financial Affairs, failed to surrender property of the Estate, and failed to maintain and preserve financial records relating to the rent received from Ming Yu and the support payments received from Michael DeRise." (*Id.*)

### E. The Trial

On October 12, 2006, the parties submitted the JPTS. The JPTS states, in

---

[2] As of the petition date, the Debtor's assets included her Residence, which according to her Schedule D, had a fair market value of $430,000, and which was subject to a first mortgage of $210,880.

[3] In particular, the Trustee argues that "the Debtor repeatedly lied on her Schedules D, I and J and on her Statement of Financial Affairs, including: (1) falsely representing that she was paying her first mortgage on a monthly basis; (2) failing to identify the second mortgage; (3) listing income and expenses in Schedules I and J that contradicted the income and expenses in the Statement of Financial Affairs; (4) misstating the amount of her support payments in Schedule I; and (5) claiming to be receiving rent that she never received." (Trustee's Br., at 19.)

4

relevant part:

> Attached is a list of exhibits intended to be offered by each party, other than exhibits to be used for impeachment only. The parties have exchanged copies of all exhibits.

(JPTS, at 5.) The trial was conducted on November 8, 2006. The trial commenced with the following colloquy regarding certain exhibits identified in the JPTS:

> MR. PERGAMENT: Judge, I'm going to hand the witness the trial exhibits that were previously submitted.
>
> THE COURT: Okay. Is there a stipulation as to their admissibility.
>
> MR. PERGAMENT: Yes, Judge. These were submitted to the court, I believe, on October 12th.
>
> THE COURT: This is the one that has 22 tabs?
>
> MR. PERGAMENT: That's correct, Judge.
>
> THE COURT: Okay. I have that in front of me.
>
> MR. PERGAMENT: Thank you, Judge.
>
> MR. ARTURA: Tab No. 7, Judge, only contains Schedules D and E. It did not contain the balance of the schedules, which I made copies for the court, and for the witness.
>
> MR. PERGAMENT: I have no objection to that, Judge.
>
> THE COURT: All right. I'll treat 7 as supplemented.

(JPTS, at 2-3.) Based on the representation that the admissibility of these exhibits was the subject of a stipulation (and the opposing counsel's lack of any objection to that representation), the Trustee had the Debtor review and read from certain exhibits in the JPTS without any foundation for the admissibility of the exhibits having been laid.[4] (*Id.* at 3.) When the Debtor's counsel later objected to the Trustee asking the Debtor to review part of an affidavit that had been prepared by the Debtor's estranged husband (Michael DeRise) as part of their matrimonial action and included in the JPTS, the objection was overruled. (*Id.*) That dialogue went as follows:

> MR. PERGAMENT: Did you review the affidavit of Michael DeRise, which is Exhibit 21?
>
> A: No. I didn't receive this paper.
>
> Q: If you look at paragraph 5 of this affidavit, you see where Michael DeRise asserts that he paid you approximately $7,000 in support and maintenance?
>
> MR. ARTURA: Your Honor, I object.

---

[4] Although the parties allegedly stipulated to 22 Exhibits in the JPTS, the specific exhibits utilized at trial, as they relate to the Bankruptcy Judge's allegedly erroneous ruling, are the Michael DeRise and Ming Yu affidavits, as well as state court pleadings in the Debtor's pending divorce proceeding.

5

> \*\*\*
>
> MR. ARTURA: I object to this affidavit being used. He can simply ask the question. This is a self-serving affidavit as part of a matrimonial action.
>
> THE COURT: I'm not testing the validity or the accuracy of this. He's simply using this to ask her whether it refreshes her recollection. It's a statement by her husband.
>
> MR. PERGAMENT: Judge, it's even easier. He signed a joint pretrial statement [sic] admissible as evidence that's already in evidence. So his objection is frivolous.
>
> THE COURT: Well, I do think you are bound by your stipulations. . . . So it's both relevant, and subject to the stipulations already made. . . .

(JPTS, at 21-23.) As noted above, when the Trustee again represented that the exhibit was the subject of a stipulation in the JPTS, there was no objection to that representation by opposing counsel and the parties and the Court proceeded as if these exhibits were part of the record.

### F. The Bankruptcy Court Decision

In its May 4 Memorandum and Order, the Bankruptcy Court dismissed the Trustee's complaint. (May 4 Memorandum and Order, at 27.) The Bankruptcy Court also found that "[t]he plain language [of the JPTS] precludes any logical implication that the parties agreed to the admission of these exhibits." (*Id.* at 12.) The Bankruptcy Court further stated that the Trustee failed to comply with the Federal Rules of Evidence for admitting any of the state court pleadings in the pending divorce proceeding. Specifically, the Bankruptcy Court concluded, "[d]uring the trial, when asked by the Court whether the exhibits proffered were stipulated to, the trustee simply stated that the exhibits were previously submitted to the Court on October 12th. . . . The trustee is presumably referring to the exhibits attached to the [J]PTS, in which the parties stated that they 'intended' to offer these exhibits. . . . Thus, these exhibits were never properly admitted into evidence at the trial." (*Id.* at 12 n.9.)

### G. The Instant Appeal

On July 25, 2007, the Trustee filed an appeal before this Court with respect to the May 4 Memorandum and Order dismissing the complaint by which the Trustee requested the entry of an order and judgment, *inter alia*, denying the Debtor her discharge. On August 18, 2007, the Trustee filed his brief. On August 24, 2007, the Debtor filed her opposition. On September 11, 2007, the Trustee filed his reply. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *See* Fed. R. Bank. P. 8013.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, NO. 05-7026-BK, 2007 WL 2492789, at \*3 (2d Cir. Sept. 6, 2007); *see also Lubow*

*Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law de novo, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); accord *In re Ionosphere Clubs*, 922 F.2d 984, 988-89 (2d Cir. 1990). "The question of a debtor's knowledge and intent under §727(a)(4) is a matter of fact . . . ." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (internal citations omitted); *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001).

The Court will also review the Bankruptcy Court's evidentiary rulings for an abuse of discretion. *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 106 (N.D.N.Y. 2005); *see Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999). "A bankruptcy court abuses or exceeds its discretion 'when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions.'" *Daly v. Richardson (In re Richardson)*, No. 3:01CV2126 (DJS), 2004 WL 2211726, at *2 (D. Conn. Sept. 28, 2004) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). However, the decision is reversible "only if it also affects a party's substantial rights." *In re Richardson,* 2004 WL 2211726, at *2 (citing to *Schering Corp.*, 189 F.3d at 224); *see also* Fed. R. Evid. 103(a).

### III. THE BANKRUPTCY COURT'S EVIDENTIARY RULING

The Trustee argues that the Bankruptcy Court's admission of allegedly stipulated exhibits into evidence at trial and its subsequent refusal to consider those exhibits in making its ultimate determination in the May 4 Memorandum and Order warrants a reversal. The Court agrees.

At the trial, the Trustee stated to the Bankruptcy Court that certain exhibits were stipulated to by the parties in the JPTS and therefore should be automatically deemed admitted during the trial. (Trial Tr., at 2-3, 23.) The Bankruptcy Court questioned counsel regarding whether such JPTS exhibits were actually stipulated to by the parties, and was assured so by the Trustee. (*Id.*) Counsel for the Debtor never objected to this representation by the Trustee regarding this stipulation. In fact, counsel for the Debtor participated in the conversation about the alleged stipulation by asking to supplement Exhibit 7 at that time. (*Id.* at 23.) The Bankruptcy Court ruled that these exhibits were admissible and could be the subject of questioning of the Debtor during the trial. (*Id.*) This ruling essentially guided the Trustee's conduct for the remainder of the trial.

However, when the Bankruptcy Judge issued his May 4 Memorandum and Order, he excluded two of the affidavits – the Michael DeRise affidavit and the Ming Yu affidavit – that he originally admitted during the trial and refused to look at them as evidence on the grounds that the JPTS does not state that these exhibits were stipulated to by the parties. (May 4 Memorandum and Order, at 12.) The Court finds this determination to be an abuse of discretion. The JPTS states, in relevant

7

part:

> Attached is a list of exhibits intended to be offered by each party, other than exhibits to be used for impeachment only. The parties have exchanged copies of all exhibits

(JPTS, at 5.) Although the Court acknowledges that the JPTS on its face does not evidence that the parties stipulated to these exhibits, the Bankruptcy Court erred in making an in-court determination on the record that such exhibits were admissible and then, in the post-trial decision without any notice to the parties, refusing to follow that determination in analyzing the evidence. As a threshold matter, the Bankruptcy Court apparently never considered the possibility that, even if the language of the JPTS was inartfully drafted, the parties may have intended to agree to the admissibility of such documents. That possibility is buttressed by the fact that, when the Trustee made the representation regarding the stipulation at trial and the Bankruptcy Court stated it would consider such exhibits, there was no immediate objection from opposing counsel.[5] Moreover, regardless of whether there was in fact a stipulation, the Trustee relied upon, and was guided by, that determination at trial. In other words, the Trustee would have had the opportunity to react and remedy any rejection of a stipulation regarding the admissibility of the documents had this occurred in the courtroom at the time of trial. For instance, the Trustee could have either objected to the Bankruptcy Court's exclusion of the affidavits on the record, or in the alternative, called relevant witnesses to properly authenticate such documents.

In addition, although it is possible that the Bankruptcy Court's ultimate determination may not have been any different had these documents been admitted into evidence, *see, e.g., In re Richardson*, 2004 WL 2211726, at *2 (finding that even if the bankruptcy court erred in admitting evidence, the error was harmless), the Court cannot make that determination based on the record as it stands. The record on appeal is not at all clear as to the impact of the matrimonial and rental affidavits, especially because they were not provided to this Court, on the ultimate issues (including Debtor's credibility) which were the focus of the trial. Thus, a *de novo* review of the Bankruptcy Court's ultimate determination is not possible until this issue is addressed.

The Second Circuit has held that a party's substantial rights are affected when a court "excludes a party's primary evidence in support of a material fact, and failure to prove that fact defeats the party's claim." *Schering Corp.*, 189 F.3d at 224 (citing *O'Neal v. Esty*, 637 F.2d 846, 848 (2d Cir. 1980)). Here, the Bankruptcy Court rested its holding on the "grossly inadequate evidentiary record" established by the Trustee.[6] (May 4 Memorandum and Order, at 24.) The Trustee persuasively argues that the "evidence that the Trustee was relying upon to prove his case,

---

[5] In fact, the Appellee notes in her brief on appeal, in connection with the exhibits listed in the JPTS, that "the Court did not admit certain documents from Appellee either." (Appellee's Memorandum of Law, at 6 n.1.)

[6] Specifically, the Bankruptcy Court stated "[a]s a matter of federal evidence, the trustee could have reconstructed that uncomplicated transactional history with a short affidavit from Michael DeRise, but the trustee failed to have it admitted into evidence." (May 4 Memorandum and Order, at 21.)

8

including evidence pertaining to the matrimonial proceedings between the Debtor and Michael De[R]ise, essentially vanished." (Trustee's Br., at 13.) Accordingly, the Court finds that excluding the documents affected the Trustee's substantial rights, given that his alleged primary evidence was not taken into consideration by the judge.[7]

Given the Bankruptcy Court's erroneous rejection of the admissibility of the exhibits, as well as the enormous amount of uncertainty surrounding the relevance of the admissibility of the two exhibits to the determination of the disputed issues that were the subject of the trial, the Court cannot find that such error was harmless. Therefore, the Court remands this matter to the Bankruptcy Court to either consider the exhibits that the Trustee wished to introduce at trial (if there is no objection to their admissibility), or in the alternative, re-open the trial so that the Trustee can call the appropriate witnesses to properly introduce such exhibits.[8]

As for the Trustee's remaining arguments on appeal, those issues cannot be addressed at this time in light of the remand (except the pure legal issue discussed *infra*) because the excluded exhibits – specifically the Michael DeRise and the Ming Yu affidavits – could bear on the Debtor's credibility and alleged fraudulent intent in filing the Schedules and SOFA, and her actions throughout the bankruptcy proceeding.[9] In other words, the Debtor's credibility underlies all of the Bankruptcy Court's factual determinations under Section 727(a) and 521(a)(4). Therefore, the Court is unable to analyze such arguments at this juncture. However, the issue on appeal as to whether the Bankruptcy Court could consider the Debtor's lack of sophistication in determining fraudulent intent is a purely legal matter that can be decided prior to remand. Accordingly, the Court will address that issue below.

### IV. CONSIDERATION OF THE DEBTOR'S LACK OF SOPHISTICATION

The Trustee argues that the Bankruptcy Court erred in considering the Debtor's lack of financial sophistication in determining whether the Debtor acted with fraudulent intent in misrepresenting her Schedules and Statement of Affairs, and also in disobeying an order of the Bankruptcy Court. In particular, in concluding that the Debtor lacked fraudulent intent, the Bankruptcy Court noted, among other things that the Debtor's testimony is credible "[g]iven the remarkable absence of any financial sophistication, based upon her lack of formal schooling beyond a G.E.D. of her high school program and her apparent lack of any experience in maintaining household financial records."

---

[7] In fact, the Bankruptcy Court even acknowledged the relevance of the exhibits. (*See* May 4 Memorandum and Order, at 12.)

[8] Moreover, to the extent that the Bankruptcy Court also disregarded Debtor's exhibits that were introduced during the trial, the Bankruptcy Court on remand shall similarly either consider those exhibits or re-open the trial and allow the Debtor to properly introduce such exhibits.

[9] For instance, the Trustee argues that the Debtor "filed false Schedule and Statement of Financial Affairs, failed to surrender property of the Estate and failed to maintain and preserve financial records relating to the rent received from Ming Yu and the support payments received from Michael DeRise." (Trustee's Br., at 5.) The Michael DeRise affidavit pertaining to child support paid, and the Ming Yu affidavit pertaining to rents paid paid, are at the center of the Trustee's arguments.

9

(May 4 Memorandum and Order, at 24.)[10]

This Court recently decided this exact issue in *Pergament v. Smorto ("In re Smorto")*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4-*6 (E.D.N.Y. Mar. 12, 2008) (slip opinion). In *Smorto*, the Trustee similarly argued that the Bankruptcy Court erred in considering the Debtor's lack of sophistication in determining whether the Debtor acted with fraudulent intent. Analyzing this legal standard under a *de novo* standard of review, this Court found that there is absolutely no support in the statutory language of 727(a), nor in the case authority, for the proposition that the Court is prohibited from taking into account the defendant's business sophistication as one of a variety of factors when assessing the intent of a debtor. (*Id.* at *5.) In doing so, this Court relied on a long list of cases that have considered such a factor in the context of Section 727(a)(4)(A) as well as other contexts, in determining whether a debtor had intent to defraud. *See, e.g., Johnson v. Greene (In re Greene)*, 340 B.R. 93, 100 (Bankr. M.D. Fla. 2006) ("The Court finds that Defendant's lack of records documenting his employment and income from 2004 are the result of his lack of sophistication and business experience and do not warrant a denial of his discharge. Finally, the court finds that the omissions and misrepresentation on Defendant's bankruptcy schedules are attributable to inadvertence, oversight, and a lack of sophistication rather than to fraudulent intent."); *IBA, Inc. v. Hoyt (In re Hoyt)*, 337 B.R. 463, 468 (W.D.N.Y. 2006) (referencing that debtor was a "sophisticated businessman" in finding fraudulent intent and denying debtor's discharge); *Weiss*, 2001 WL 423050, at *4 ("These repeated material omissions, made by a sophisticated businessperson, represent a pattern . . . to support the conclusion that Weiss acted with fraudulent intent."); *see also Kovacs v. Hanson (In re Hanson)*, 373 B.R. 522, 527 (Bankr. N.D. Ohio 2007) (considering debtor's lack of sophistication pertaining to bankruptcy law in finding lack of any intent to defraud); *Citibank (S.D.), N.A. v. Spradley (In re Johnson)*, 313 B.R. 119, 129-30 (Bankr. E.D.N.Y. 2004) (holding that "[t]he financial sophistication of the debtor" is one factor that a court can consider in determining whether the debtor intended to repay debt at the time credit charges or cash advances were incurred) (citation omitted); *Citibank (S.D.), N.A. v. Olwan (In re Olwan)*, 312 B.R. 476, 485 (Bankr. E.D.N.Y. 2004) (same).

In arguing that reliance on this factor was erroneous, the Trustee again relies heavily on *In re Murray*, 249 B.R. 223, 232-33 (E.D.N.Y. 2000), as he did in *In re Smorto*, for the proposition that debtors who are

---

[10] The Bankruptcy Court also explained earlier in the May 4 Memorandum and Order that "[i]t was obvious to this Court from observing the debtor's demeanor during the trial and in listening to her testimony that she is really quite unsophisticated in financial or legal matters. As she candidly testified, she dropped out of high school before graduating and she has worked as a dental assistant as her primary occupation. The Court finds, based upon the debtor's testimony in open court, that her primary attention was focused on caring for her young teen-age daughter and in moving her protracted and expensive divorce proceeding forward. It is understandable why she did not and could not as a psychological matter timely and carefully comply with her duty to file complete Schedules and her SOFA on her own. It was only when she retained an experienced consumer bankruptcy attorney, that she obtained the assistance necessary to cure the deficiencies in her Schedules and her SOFA." (May 4 Memorandum and Order, at 13-14) (citation omitted.)

10

unsophisticated in financial matters are not given a more lenient standard of truthfulness and accuracy under § 727(a)(4)(A). (*See* Trustee's Br., at 19) ("Under *Murray*, the Bankruptcy Court had no basis to take into account the Debtor's perceived lack of financial sophistication in determining whether the Debtor's false statements were made with fraudulent intent. . . .") Here, as in *In re Smorto*, the Trustee's reliance on *Murray* is entirely misplaced. In *Murray*, the court did not conclude that financial sophistication is an impermissible consideration on the issue of the debtor's intent. Instead, the court simply found that, once it has been proven that the debtor intentionally lied, then a lack of financial sophistication is not a defense to an intentionally false statement. In particular, the *Murray* court explained:

> Neither the bankruptcy court nor appellee cited any authority to support this proposition, and this Court's own research has not uncovered any legal basis to make this distinction between sophisticated and unsophisticated debtors. Murray was found to have intentionally lied, both in his schedules and at the trial in the adversary proceeding. This conduct cannot be excused, no matter whether debtor was a business-owning or professionally-employed perjurer or simply a working class perjurer.

*In re Murray*, 249 B.R. at 232-33. The *Murray* analysis is inapposite here because the Bankruptcy Court did not erroneously utilize a lack of financial sophistication to excuse the Debtor for intentionally lying; rather, the Bankruptcy Court properly considered that factor in determining, in the first instance, whether the Debtor had fraudulent intent at all.

In sum, this Court concludes that, in determining whether the Debtor's allegedly false or inaccurate statements were innocent mistakes or intentional lies, the Bankruptcy Court was permitted to consider the Debtor's lack of financial sophistication, among other factors. Accordingly, the Trustee's contention that the Bankruptcy Court erred in this respect is without merit.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Bankruptcy Court erred in refusing to consider the exhibits deemed previously admitted at trial and, therefore, reverses the May 4, 2007 Memorandum and Order and remands the case to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order. Specifically, the Bankruptcy Court should consider the exhibits that parties wished to introduce at trial in the JPTS (if they are, in fact, part of a stipulation) or, in the alternative, re-open the trial so that the parties can call the appropriate witnesses to properly introduce such exhibits.

In addition, the Court concludes as a matter of law that the Bankruptcy Court did not commit legal error in considering the Debtor's lack of financial sophistication as a factor in determining fraudulent intent. Thus, the Bankruptcy Court is permitted to again consider that factor on remand.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 27, 2008
Central Islip, New York

\* \* \*

The attorney for the Trustee-Appellant is Marc A. Pergament, Esq., of Weinberg, Gross & Pergament, LLP, 400 Garden City Plaza, Suite 403, Garden City, New York, 11530. The attorney for the Debtor-Appellee is Richard F. Artura, Esq., of Reno & Artura, 150 E. Sunrise Highway, Suite 206, Lindenhurst, NY 11757.